Matthew M. Gurvitz (SBN 272895)
Email: mgurvitz@willkie.com
WILLKIE FARR & GALLAGHER LLP
2029 Century Park East, Suite 2900
Los Angeles, CA 90067
Telephone: (310) 855-3000

Debra Bogo-Ernst (*pro hac vice admission*)
Email: dernst@willkie.com
300 N. LaSalle Dr.
Chicago, IL 60654
Telephone: (312) 728-9062

Attorney for Defendants
Cetera Financial Group, Inc. and
Cetera Investment Services LLC

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**SAN DIEGO**

JENNIFER SAGER, individually and on behalf of all others similarly situated,

Plaintiff,

v.

CETERA FINANCIAL GROUP, INC. and CETERA INVESTMENT SERVICES LLC,

Defendants.

Case No. 3:26-cv-03372-RSH-VET

Judge: Hon. Robert S. Huie
Courtroom 3B

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT**

[*Filed concurrently with Notice of Motion to Dismiss, and [Proposed] Order*]

Date: October 5, 2026
Time: *Under Submission
Courtroom: 3B

Action Filed: June 3, 2026
Trial Date: None set

*PER CHAMBER RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT

## TABLE OF CONTENTS


Page

INTRODUCTION ........ 1

FACTUAL BACKGROUND ........ 1

STANDARD OF REVIEW ........ 2

ARGUMENT ........ 3

I. The Complaint Fails Rule 8's Basic Pleading Standards and Should Be Dismissed Under Rule 12(b)(6) or a More Definite Statement Should Be Required. ........ 3

II. CFG Should Be Dismissed as a Defendant ........ 4

III. Plaintiff's Breach of Contract Claim Fails (Count II) ........ 5

A. Plaintiff Fails to Allege Formation of a Contract. ........ 5

B. Plaintiff Did Not Allege that She Performed Her Contractual Obligations Related to Her Breach of Contract Claim. ........ 6

C. Plaintiff Fails to Allege a Breach. ........ 7

i. Plaintiff's Reasonable Rate-Related Allegations Do Not Support a Breach of Contract Claim. ........ 7

ii. Plaintiff's Apparent Attempt to Use the October 2023 CIS Disclosure as a Basis for a Breach Fails. ........ 8

iii. Using Other Cash Sweep Programs as a Purported Benchmark Does Not Provide an Alleged Basis for a Breach. ........ 9

iv. The Form CRS Also Does Not Support a Breach of Contract Claim. ........ 10

IV. The Breach of Implied Covenant of Good Faith and Fair Dealing Claim Should Be Dismissed (Count III). ........ 11

A. Plaintiff Has Not Plausibly Alleged Bad Faith. ........ 12

B. Plaintiff Has Not Alleged that Her Performance Was Impeded. ........ 12

V. Plaintiff Has Not Alleged—and Cannot Allege—a Breach of Fiduciary Duty (Count I). ........ 12

A. Plaintiff Has Not Alleged the Existence of a Fiduciary Duty ............... 13

B. Plaintiff Has Not Adequately Alleged Breach, Causation, or Damages. ........................................................................................... 17

VI. Plaintiff's Negligent Misrepresentation and Omissions Claim Should Be Dismissed (Count IV). .......................................................................... 17

A. The Independent Duty Doctrine Bars Plaintiff's Negligent Misrepresentation and Omissions Claim ............................................ 18

B. Plaintiff Has Not Alleged a Duty of Reasonable Care. ......................... 19

C. Plaintiff Fails to Plead Breach of Duty. ................................................ 20

D. There Are No Allegations of Reasonable Reliance. ............................. 21

E. Plaintiff Fails to Plead Damages Caused by the Alleged Negligent Misrepresentation. .............................................................................. 22

F. Plaintiff Has Not Pled Negligent Misrepresentation with Particularity. 22

VII. Plaintiff's Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") Claim Should Be Dismissed (Count V) ......................................... 22

A. Plaintiff Fails to Allege a Deceptive Practices Claim Under ICFA. ..... 23

i. Plaintiff Fails to Allege a Materially Deceptive Act. .................. 23

ii. Plaintiff Fails to Allege Damages Proximately Caused by Defendants. ............................................................................... 24

iii. Plaintiff Fails to Plead ICFA with Particularity Under Rule 9(b). ..................................................................................................... 25

B. Plaintiff Fails to Allege Unfair Practices Under ICFA. ......................... 26

C. Plaintiff's ICFA Putative Class Does Not Have a Sufficient Illinois Nexus and Should Be Stricken. ........................................................... 27

i. Plaintiff Has Not Sufficiently Alleged an Illinois Nexus. ........... 27

ii. The Illinois Proposed Subclass Should Be Stricken. ................... 28

VIII. Plaintiff Fails to State a Claim for Unjust Enrichment (Count VI). ................. 29

CONCLUSION ........................................................................................................ 30

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Allen v. Fid. Brokerage Servs. LLC*,
711 F. Supp. 3d 219 (S.D.N.Y. 2024) .............................................. 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................ 2, 16

*Ass'n of Mill & Elevator Mut. Ins. Co. v. Barzen Int'l, Inc.*,
553 N.W.2d 446 (Minn. Ct. App. 1996) .............................................. 4

*Avery v. State Farm Mut. Auto. Ins. Co.*,
835 N.E.2d 801 (Ill. 2005)........................................................ 27, 28

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................ 2, 4

*Berger v. Nationstar Mortg.*,
118 F.Supp.3d 1121 (D. Minn. 2015) .............................................. 18

*Bernstein v. Extendicare Health Servs.*,
607 F. Supp. 2d 1027 (D. Minn 2009) ................................................ 3

*Bober v. Glaxo Wellcome PLC*,
246 F.3d 934 (7th Cir. 2001) .............................................................. 23

*Browning v. AT&T Corp.*,
682 F. Supp. 2d 832 (N.D. Ill. 2009)................................................ 26

*Carlson v. SALA Architects, Inc.*,
732 N.W.2d 324 (Minn. Ct. App. 2007) ............................................ 13

*Ciofoletti v. Securian Fin. Grp., Inc.*,
No. 18-cv-3025, 2020 WL 12863773 (D. Minn. Sept. 21, 2020)...... 13

*City Ctr. Realty Partners LLC v. Macy's Retail Holdings, Inc.*,
No. 17–CV–528, 2017 WL 4081896 (D. Minn. Sept. 13, 2017)......... 6

*Corbey v. Grace*,
605 F. Supp. 247 (D. Minn. 1985) .................................................... 13

*Davis v. Wash. Univ. in St. Louis*,
960 F.3d 478 (8th Cir. 2020) ............................................................ 10

*De Bouse v. Bayer*,
922 N.E.2d 309 (Ill. 2009) .......... 25

*DeBlasio v. Merrill Lynch & Co.*,
No. 07CIV318RJS, 2009 WL 2242605 (S.D.N.Y. July 27, 2009) .......... 18

*DeLeon v. Beneficial Const. Co.*,
55 F. Supp. 2d 819 (N.D. Ill. 1999) .......... 24

*Dey v. Robinhood Mkts., Inc.*,
780 F. Supp. 3d 882 (N.D. Cal. 2025) .......... 14, 15, 16

*Edney Distr. Co. v. Buhler Tr. Inc.*,
No. 10–CV–04929, 2011 WL 13136004 (D. Minn. Sept. 27, 2011) 17, 22

*In re EpiPen Direct Purchaser Litig.*,
No. 20-cv-0827, 2022 WL 1017770 (D. Minn. Apr. 5, 2022) .......... 4

*Fairview Health Servs. v. Armed Forces Off. Royal Embassy of Saudi Arabia*,
705 F. Supp. 3d 898 (D. Minn. 2023) .......... 13, 17

*First Integrity Bank, N.A. v. Ohio Cas. Ins. Co.*,
No. 05–2761, 2006 WL 1371674 (May 15, 2006) .......... 18

*First Nat'l Bank Texas v. Wells Fargo Bank, N.A.*,
No. 26-cv-2243, 2026 WL 2211171 (D. Minn. July 31, 2026) .......... 18

*Fleury v. Gen. Motors LLC*,
654 F. Supp. 3d 724 (N.D. Ill. 2023) .......... 23, 26

*Flores v. Aon Corp.*,
242 N.E.3d 340 (Ill. App. Ct. 2023) .......... 23

*Flynn v. Am. Home. Prods. Corp.*,
627 N.W.2d 342 (Minn. Ct. App. 2001) .......... 17, 19

*Frengel v. McLaren Automotive, Inc.*,
644 F. Supp. 3d 738 (S.D. Cal. 2022) .......... 1

*Futo v. U.S. Bancorp*,
826 F. Supp. 3d 1016 (D. Minn. 2026) .......... *passim*

*Garza v. Citigroup Inc.*,
192 F. Supp. 3d 508 (D. Del. 2016) .................................................... 4

*Gehring v. Osaic Inc.*,
No. CV-25-00367-PHX-KML, 2026 WL 248379 (D. Ariz. Jan. 30, 2026) ......................................................................................... 4, 30

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ............................................................ 3

*Goldsmith v. UBS Fin. Servs. Inc.*,
No. 1:24-CV-6354-GHW, 2026 WL 819461 (S.D.N.Y. Mar. 25, 2026) ......................................................................................... 29

*Graff v. Brighthouse Life Ins. Co.*,
698 F. Supp. 3d 1080 (D. Minn. 2023), *aff'd*, 109 F.4th 1118 (8th Cir. 2024) ......................................................................................... 29

*Halperin v. Int'l Web Servs., LLC*,
123 F. Supp. 3d 999 (N.D. Ill. 2015).................................................. 25

*Hart v. Amazon.com, Inc.*,
191 F. Supp. 3d 809 (N.D. Ill. 2016).................................................. 25

*Haywood v. Massage Envy Franchising, LLC*,
887 F.3d 329 (7th Cir. 2018) ............................................................ 23

*Hurley v. TCF Banking and Sav., F.A.*,
414 N.W.2d 584 (Minn. Ct. App. 1987) ........................................... 14

*IGOLF, Inc. v. Bushnell Holdings, Inc.*,
No. 3:23-cv-01595-L-DTF, 2025 WL 875913 (S.D. Cal. Mar. 4, 2025) ......................................................................................... 4

*Iota Phi Lambda Sorority, Inc. v. Contenta Global Cap. Grp., LLC*,
No. 19-CV-532, 2019 WL 4687115 (D. Minn. Sept. 26, 2019) .......... 3

*Johnson v. Chapman Univ.*
SACV 21-00019-CJC, 2021 WL 3463893 at *2–3 (C.D. Cal. June 23, 2021) ......................................................................................... 5

*Johnson v. Homeownership Preservation Found.*,
No. 09–600, 2009 WL 6067018 (D. Minn. Dec. 18, 2009) ................. 6

*In re JPMorgan Chase Cash Sweep Prgm.*, No. 24 CIV. 6404 (LGS), 2026 WL 396055 (S.D.N.Y. Feb. 12, 2026) ........ 5, 15

*Kennedy v. Venrock Assocs.*, 348 F.3d 584 (7th Cir.2003) ........ 25

*Klosek v. Am. Express Co.*, No. 08–426, 2008 WL 4057534 (D. Minn. Aug. 26, 2008) ........ 11

*Lambtek Yogurt Machines v. Dreyer's Grand Ice Cream, Inc.*, No. CIV. 96–20959 SW, 1997 WL 108718 (N.D. Cal. Mar. 3, 1997) 5

*Leszanczuk v. Carrington Mortg. Servs. LLC*, 21 F.4th 933 (7th Cir. 2021) ........ 27

*Liberty Cap. Grp. v. Oppenheimer Holdings Inc.*, 802 F. Supp. 3d 701 (S.D.N.Y. 2025) ........ 5, 14, 19

*In re LPL Fin. Cash Sweep Litig.*, 789 F. Supp. 3d 961 (S.D. Cal. 2025) ........ *passim*

*In re Lurie Children's Hosp.*, No. 24-cv-05503, 2025 WL 2754760 (N.D. Ill. Sept. 27, 2025) ........ 23

*Marasigan v. MidFirst Bank*, No. 23-cv-00634-H-MSB, 2023 WL 3470128 (S.D. Cal. May 15, 2023) ........ 4

*Mehlman v. Ameriprise Fin. Inc.*, No. 24-3018, 2025 WL 2403252 (D. Minn. Aug. 19, 2025) ........ 14

*Michael v. Vogelpohl*, No. A05–1263, 2006 WL 1073191 (Minn. Ct. App. Apr. 15, 2006). 17

*Miles v. Simmons Univ.*, 514 F. Supp. 3d 1070 (D. Minn. 2021) ........ 4

*Motley v. Homecoming Fin., LLC*, 557 F. Supp. 2d 1005 (D. Minn. 2008) ........ 6, 7

*Nedlloyd Lines B.V. v. Sup. Ct.*, 3 Cal. 4th 459 (1992) ........ 3

*Neilson v. Union Bank of California, N.A.*,
290 F. Supp. 2d 1101 (C.D. Cal. 2003) .... 3

*O'Connor v. Ford Motor Co.*,
477 F. Supp. 3d 705 (N.D. Ill. 2020) .... 25

*Our Pet Project, LLC v. Int'l Paper Co.*,
No. 22-cv-1209, 2023 WL 143224 (N.D. Ill. Jan. 10, 2023) .... 28

*Paek v. Plaza Home Mortg.*,
No. CV 09–1729, 2009 WL 1668576 (C.D. Cal. June 15, 2009) .... 8

*Patton v. Cox*,
276 F.3d 493 (9th Cir. 2002) .... 3

*Polizo v. Boston Scientific Corp.*,
No. SACV 09-01353-JVS, 2011 WL 13225104 (C.D. Cal. May 13, 2011) .... 3

*Ritenour v. Carrington Mortg. Servs. LLC*,
228 F. Supp. 3d 1025 (C.D. Cal. 2017) .... 17

*Robinson v. Toyota Motor Credit Corp.*,
775 N.E. 2d 951 (Ill. 2002) .... 26

*Rude v. Larson*,
207 N.W.2d 709 (Minn. 1973) .... 13

*Schmidlin v. Raymond James Fin., Inc.*,
No. 8:24-cv-2041-KKM-CPT, 2026 WL 847197 (M.D. Fla. Mar. 27, 2026) .... 17, 29

*ServiceMaster of St. Cloud v. GAB Bus. Servs, Inc.*,
544 N.W. 2d 302 (Minn. 1996) .... 29

*Sklodowski v. Countrywide Home Loans, Inc.*,
832 N.E.2d 189 (Ill. App. Ct. 2005) .... 24

*Souter v. Edgewell Pers. Care Co.*,
542 F. Supp. 3d 1083 (S.D. Cal. 2021) .... 3

*Sports & Travel Mktg., Inc. v. Chicago Cutlery Co.*,
811 F. Supp. 1372 (D. Minn. 1993) .... 11, 12

*Swenson v. Bender*,
764 N.W.2d 596 (Min. Ct. App. 2009) ........................................ 13, 14

*Tharaldson v. Ocwen Loan Serv., LLC*,
840 F. Supp. 2d 1156 (D. Minn. 2011) ............................................. 20

*Tri-Plex Tech. Servs., Ltd. v. Jon-Don*,
LLC, 241 N.E.3d 454 (Ill. 2024) .................................................. 24, 25

*U.S. Bank Nat'l Ass'n v. San Antonio Cash Network*,
252 F. Supp. 3d 714 (D. Minn. 2017) ............................................... 11

*United States v. Bestfoods*,
524 U.S. 51 (1998)............................................................................ 4

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
464 F. Supp. 3d 634 (S.D.N.Y. 2020) ............................................... 29

*Welch v. TD Ameritrade Holding Corp.*,
No. 07 Civ. 6904, 2009 WL 2356131 (S.D.N.Y. July 27, 2009)......... 9

*In re Wells Fargo Cash Sweep Litig.*,
No. 24-CV-04616-VC, 2025 WL 1785315 (N.D. Cal. June 27, 2025)
........................................................................................... 4, 15, 29

*Wooley v. Jackson Hewitt, Inc.*,
540 F. Supp. 2d 964 (N.D. Ill. 2008)................................................. 24

*Wright v. Capella Univ., Inc.*,
378 F. Supp. 3d 760 (D. Minn. 2019) ............................................... 30

*Zinter v. Univ. of Minnesota*,
799 N.W. 2d 243 (Minn. 2011) .......................................................... 5

**Statutes**

Illinois Consumer Fraud Act ..................................................... 22, 26, 27

Securities Exchange Act of 1934 ......................................................... 15

**Other Authorities**

17 CFR § 240.15l-1(a)(1)..................................................................... 16

84 Fed. Reg. 33318, 33462 (July 12, 2019).......................................... 16

84 Fed. Reg. at 33462 .......... 16

Fed. R. Civ. P. 8 .......... *passim*

Fed. R. Civ. P. 9(b) .......... *passim*

Fed. R. Civ. P. 12(b)(6) .......... 2, 3, 5

Fed. R. Civ. P. 12(e) .......... 4, 5

INVESTOR.GOV, *Cash Sweep Programs for Uninvested Cash in Your Investment Accounts – Investor Bulletin*, SEC (May 14, 2025) .......... 26

## INTRODUCTION

Plaintiff challenges the interest rates paid by Defendant Cetera Investment Services LLC ("CIS") to her through CIS's cash sweep program, and CIS's parent company (Cetera Financial Group, Inc.'s ("CFG")) purported authority over, and direct benefit from, this program. The voluntary cash sweep program enables CIS's brokerage account customers to earn extra interest on money awaiting investment in their account by sweeping their short-term cash into interest-bearing accounts at participating program banks ("Program Banks"). Compl. ¶ 2. Plaintiff contends that she should have received more interest than Defendants paid her and that Defendants did not disclose enough specifics about the cash sweep program.

Plaintiff's Complaint is deficient in material ways, and Defendants are left guessing as to key elements of her claims. She makes no effort to separate the Defendants and their alleged conduct, and Plaintiff squarely misrepresents Defendants' disclosures. Plaintiff's Complaint should be dismissed with prejudice. *Futo v. U.S. Bancorp*, 826 F. Supp. 3d 1016, 1039 (D. Minn. 2026) (dismissing similar cash sweep claims with prejudice).

## FACTUAL BACKGROUND

Defendant CIS is a broker-dealer. Compl. ¶ 16. Independent financial advisors and financial institutions partner with CIS for securities brokerage services. CIS does not offer ongoing investment advice, which is offered through an affiliated entity, Cetera Investment Advisers LLC, a nonparty. Exhibit ("Ex.") B at 1.[1] Clients control *all* investment decisions in a brokerage account. *Id.* at 1. CIS does not even have an obligation to monitor these investments. *Id.* CIS is incorporated in Delaware,

[1] The Court may consider the full content of documents incorporated by reference in the Complaint in a motion to dismiss. *Frengel v. McLaren Automotive, Inc.*, 644 F. Supp. 3d 738, 744 (S.D. Cal. 2022). Plaintiff's reliance on Defendants' disclosures in footnotes 1& 8 and paragraph 55 of the Complaint permits the Court to consider the full context of the language in their respective documents. The October 2023 Disclosure Statement is attached as Ex. A, and CIS's Form CRS is attached as Ex. B.

headquartered in Minnesota and is a wholly owned subsidiary of CFG, a Delaware corporation headquartered in California. Compl. ¶ 16.

Plaintiff alleges that she was Defendants' brokerage account customer and participated in Defendants' FlexInsured cash sweep program. Compl. ¶ 14. The Complaint alleges little about her account, e.g., she does not allege when her account opened, how much she maintained in her account, or how much interest she was paid by Defendants.

In CIS's cash sweep programs, for participating customers, uninvested cash balances held in a participating CIS account are transferred, or "swept," into interest-bearing, FDIC-insured deposit accounts with an unaffiliated bank and back when needed in the CIS account. Compl. ¶ 23. CIS offers two bank cash sweep programs to its brokerage and advisory clients: (i) the FlexInsured Cash Sweep Program, which is the default option for most brokerage and retail advisory accounts; and (ii) the Insured Deposit Sweep Account Program (IDSA), which is the default sweep program for certain advisory retirement accounts. *Id*. at ¶ 27. The IDSA account is only available for clients with certain investment advisory retirement accounts and is not at issue in this case; Plaintiff only alleges that she maintained a FlexInsured Account. Once the uninvested cash is swept, the Program Bank pays interest to CIS on the cash deposited, a portion of which is credited to the client's CIS account. *Id.* at ¶ 26. The interest rate paid to the customer depends on the amount deposited by tier (or group) of investment. Interest rates, deposit tiers, and CIS's fees are publicly disclosed. Ex. A at 2, 4, 5, 8.

## STANDARD OF REVIEW

To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court must accept a complaint's well-pled allegations as true,

"[t]his presumption does not extend to conclusory allegations, 'unwarranted deductions of fact, or unreasonable inferences.'" *Souter v. Edgewell Pers. Care Co.*, 542 F. Supp. 3d 1083, 1089 (S.D. Cal. 2021) (quoting *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)). As demonstrated below, Plaintiff's complaint fails to state a claim under Rule 12(b)(6).

## ARGUMENT

### I. The Complaint Fails Rule 8's Basic Pleading Standards and Should Be Dismissed Under Rule 12(b)(6) or a More Definite Statement Should Be Required.

Plaintiff fails to comply with Fed. R. Civ. P. 8, which requires a short and plain statement alleging a plausible claim against each defendant. Her barebones Complaint does not distinguish between the Defendants, simply lumping them together. Compl. ¶¶ 15–16, 20–21, 54–55, 66–67, 74–75. This leaves Defendants guessing as to which allegations tie to which Defendant. This serious pleading deficiency requires dismissal of the Complaint under Fed. R. Civ. P. 12(b)(6).[2] *Bernstein v. Extendicare Health Servs*., 607 F. Supp. 2d 1027, 1029 (D. Minn 2009) ("Although a complaint need not contain 'detailed factual allegations,' it must contain facts with enough

---

[2] While Plaintiff failed to attach an alleged contract with Defendants, CIS's Form 5305-A Account Agreement with its customers contains a Minnesota choice of law provision (Ex. C at 3), which is incorporated herein and excerpted for relevance per the Court's order (*see supra* n. 1) and should be enforced. Because this Court sits in diversity, California's choice-of-law rules apply. *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002). Under those rules, courts will enforce a contractual choice of law provision if either of the following factors is met and the chosen law does not have any fundamental conflict with California law: (1) the chosen state has a substantial relationship to the parties or their transaction, or (2) there is any other reasonable basis to do so. *Nedlloyd Lines B.V. v. Sup. Ct.*, 3 Cal. 4th 459, 466 (1992). Since CIS is headquartered in Minnesota, it has a substantial relationship to the state. Second, Minnesota law does not have any fundamental conflict with California law; indeed, Minnesota has similar elements for claims that exist in both states. *Polizo v. Boston Scientific Corp.*, No. SACV 09-01353-JVS, 2011 WL 13225104, at *4 (C.D. Cal. May 13, 2011) (breach of contract); *Iota Phi Lambda Sorority, Inc. v. Contenta Global Cap. Grp., LLC*, No. 19-CV-532, 2019 WL 4687115, at *6 (D. Minn. Sept. 26, 2019) (breach of fiduciary duty); *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) (negligent misrepresentation). Accordingly, the parties' choice of law provision should be enforced, and Minnesota law governs. *Nedlloyd Lines*, 3 Cal. 4th at 466, 470.

specificity 'to raise a right to relief above the speculative level.'") (citing *Twombly*, 550 U.S. at 545); *see also Miles v. Simmons Univ.*, 514 F. Supp. 3d 1070, 1073 (D. Minn. 2021); *Marasigan v. MidFirst Bank*, No. 23-cv-00634-H-MSB, 2023 WL 3470128, at *2 (S.D. Cal. May 15, 2023). At a minimum, the Court should order Plaintiff to amend her complaint under Fed. R. Civ. P. 12(e).

## II. <u>CFG Should Be Dismissed as a Defendant</u>

CFG, the parent of CIS, should be dismissed. Plaintiff's allegations against CFG are simply insufficient; she claims only that: (i) CFG "had ultimate authority over, and direct financial benefit from, the FDIC-Insured Bank Deposit Sweep Programs ("Programs") . . . [and purportedly] controls the policies and practices at issue;" and (ii) CIS, as a broker-dealer, is part of the CFG network, i.e., that CFG is the parent corporation of CIS. Compl. ¶¶ 14–16. Plaintiff also fails to allege any contract with CFG.

But a parent company is not generally liable for the actions of its subsidiaries. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *IGOLF, Inc. v. Bushnell Holdings, Inc.*, No. 3:23-cv-01595-L-DTF, 2025 WL 875913, at *3 (S.D. Cal. Mar. 4, 2025); *Garza v. Citigroup Inc.*, 192 F. Supp. 3d 508, 513 (D. Del. 2016). Minnesota, in particular, applies a "presumption of separateness" between a corporation and its subsidiaries. *Ass'n of Mill & Elevator Mut. Ins. Co. v. Barzen Int'l, Inc.*, 553 N.W.2d 446, 449 (Minn. Ct. App. 1996). The only specific CFG-related allegation is that CFG purportedly had "ultimate authority over, and direct financial benefit from, the Programs" and that "[CFG] controls the policies and practices at issue." Compl. ¶ 15. That allegation is not enough to state a claim against CFG. *In re EpiPen Direct Purchaser Litig.*, No. 20-cv-0827, 2022 WL 1017770, at *12 (D. Minn. Apr. 5, 2022).

Courts presiding over cash sweep cases regularly dismiss parent companies in these cases on similar grounds. *See, e.g.*, *In re LPL Fin. Cash Sweep Litig.*, 789 F. Supp. 3d 961, 992–94 (S.D. Cal. 2025); *In re Wells Fargo Cash Sweep Litig.*, No. 24-

CV-04616-VC, 2025 WL 1785315, at *4 (N.D. Cal. June 27, 2025); *Gehring v. Osaic Inc.*, No. CV-25-00367-PHX-KML, 2026 WL 248379, at *4–*5 (D. Ariz. Jan. 30, 2026); *In re JPMorgan Chase Cash Sweep Prgm.*, No. 24 CIV. 6404 (LGS), 2026 WL 396055, at *3 (S.D.N.Y. Feb. 12, 2026); *Liberty Cap. Grp. v. Oppenheimer Holdings Inc.*, 802 F. Supp. 3d 701, 710–11 (S.D.N.Y. 2025). Parent companies were dismissed in those cases despite attempts to pierce the corporate veil, unlike Plaintiff here who makes no such effort. Compl. ¶ 16. CFG thus should be dismissed.

## III. <u>Plaintiff's Breach of Contract Claim Fails (Count II)</u>

Plaintiff's breach of contract claim fails to state a claim under Fed. R. Civ. P. 12(b)(6). The Complaint is ambiguous as to: (i) what document(s) constitute the contract; (ii) whether such contract is with one or both Defendants; (iii) which provisions are at issue; and (iv) the basis for the alleged breach. Defendants are left guessing, which alone is grounds for either: (i) dismissal under Fed. R. Civ. P. 12(b)(6), *Johnson v. Chapman Univ.*, SACV 21-00019-CJC, 2021 WL 3463893 at *2–3 (C.D. Cal. June 23, 2021), or (ii) a more definite statement under Rule 12(e). *Lambtek Yogurt Machines v. Dreyer's Grand Ice Cream, Inc.*, No. CIV. 96–20959 SW, 1997 WL 108718, at *5 (N.D. Cal. Mar. 3, 1997).

To maintain a breach of contract claim under Minnesota law, Plaintiff must allege "(1) the formation of a contract, (2) the performance of conditions precedent by the plaintiff, and (3) the breach of the contract by the defendant." *Zinter v. Univ. of Minnesota*, 799 N.W. 2d 243, 245 (Minn. 2011). Plaintiff falls woefully short.

### A. <u>Plaintiff Fails to Allege Formation of a Contract.</u>

Plaintiff claims that Defendants' relationship "with their customers is governed by [unspecified] written contracts." Compl. ¶ 74. Yet, Plaintiff fails to attach or clearly quote such agreements or even allege whether she herself had such an agreement with either Defendant. The closest Plaintiff gets to alleging anything about a contract is when she quotes an October 2023 Cetera Investment Services

FlexInsured Account Disclosure Statement ("October 2023 CIS Disclosure") in ¶ 42 of the Complaint.[3] But Plaintiff never alleges that this is the full governing agreement for her relationship with either Defendant. As mentioned, Plaintiff also fails to allege any contract with CFG. The reference to the October 2023 CIS Disclosure is thrown in the middle of the Complaint without context or elaboration. Without more specific allegations, Plaintiff's breach of contract claim fails before it even gets off the ground. *Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1013 (D. Minn. 2008) (dismissing breach of contract claim where "Plaintiffs have not attached the allegedly violated contracts to the Complaint, nor have they pleaded the terms of those contracts, rendering it impossible to discern precisely how [Defendant] allegedly has breached them"); *see also Johnson v. Homeownership Preservation Found.*, No. 09–600, 2009 WL 6067018, *7 (D. Minn. Dec. 18, 2009) (dismissing contract claim when "it is impossible for [the] Court to determine whether a contract was created, the contents of the contract or whether [Defendant] breached any of the terms of the contract").

### B. Plaintiff Did Not Allege that She Performed Her Contractual Obligations Related to Her Breach of Contract Claim.

Next, in Plaintiff's breach of contract claim (Compl. ¶¶ 1–64, 73–78),[4] she fails to allege that she performed conditions precedent to enable her to recover under the contract. Without any such allegations, her breach of contract claim fails. *City Ctr. Realty Partners LLC v. Macy's Retail Holdings, Inc.*, No. 17–CV–528, 2017 WL 4081896, at *6 (D. Minn. Sept. 13, 2017).

---

[3] https://myceterasmartworks.com/Public/Portal/Content.aspx?ContentId=30051160 (last accessed August 21, 2026) (attached hereto as Ex. A).

[4] Curiously, Plaintiff appears to allege that she "fulfilled all the terms and obligations of [her] contract" in connection with her breach of implied covenant of good faith and fair dealing claim. Compl. ¶ 85. That is not pled in her breach of contract claim.

### C. Plaintiff Fails to Allege a Breach.

Plaintiff also fails to allege any plausible facts about a purported breach by Defendants, which is fatal to her claim. Plaintiff generically claims that "the rates of return paid to customers on their cash balances were not reasonable and Defendants did not act in their clients' best interests" and that Defendants "fail[e]d to adjust the interest rates paid to customers based on market, economic, and other business conditions" (Compl. ¶¶ 76–77), but Plaintiff fails to: (i) delineate between the Defendants; (ii) allege what particular provisions of what specific contracts were purportedly breached; (iii) state what precise rates Defendants paid to customers and/or Plaintiff; and (iv) set forth the interest rates that purportedly should have been paid. These pleading failures doom her contract claim. *Motley*, 557 F. Supp. 2d at 1012–13 (dismissing breach of contract claim for failure to allege which provisions defendant breached).

#### i. Plaintiff's Reasonable Rate-Related Allegations Do Not Support a Breach of Contract Claim.

Throughout the Complaint, Plaintiff seems to allege that the interest rates paid by Defendants as part of the cash sweep program were "not reasonable" and that somehow constitutes a breach. Compl. ¶ 76. Yet, Plaintiff cites no agreement or disclosure requiring payment by Defendants of "reasonable" rates. Instead, Plaintiff relies on various irrelevant definitions to invent a reasonable rate payment obligation, such as the dictionary, Organization for Economic Cooperation and Development, the IRS, and the Department of Labor, amongst others. *Id*. at ¶¶ 34–51. None of these definitions, all of which are different from one another, are set forth in any alleged contract, applicable regulation or statute, or relate to how a cash sweep program functions. Accordingly, to the extent Plaintiff is trying to base a breach of contract claim on Defendants' alleged failure to pay "reasonable" rates, Count II fails.

**ii. Plaintiff's Apparent Attempt to Use the October 2023 CIS Disclosure as a Basis for a Breach Fails.**

To the extent that Plaintiff is relying on the October 2023 CIS Disclosure as the governing agreement between the parties and claiming that Defendants breached it by not adjusting paid interest rates based on "market, economic, and other business conditions," Compl. ¶ 77, she is incorrect. First, the October 2023 CIS Disclosure has ample verbiage addressing interest rates, the vast majority of which Plaintiff fails to mention. Ex. A. Specifically, CIS discloses that the rates will be lower than money market funds and cash equivalents *numerous* times in the disclosure. *See, e.g.*, *id.* at 2 ("*Risks of the Program.* You will generally receive a lower rate of return on cash deposited through the FlexInsured Account than if it were invested in money market mutual funds."); *id.* at 5 ("The interest rates available through the FlexInsured Account will generally be lower than the interest rates available to depositors . . . The Program Banks do not have a duty to offer the highest rates available or rates that are comparable to money market mutual funds."). Accordingly, any purported breach cannot be established based on "market, economic, or other business conditions" alone. Moreover, even if it were true that Defendants were required to adjust rates over time based on these conditions (which Defendants dispute), Plaintiff alleges only that "Defendants failed to increase the amounts paid to customers." Compl. ¶ 44. There are no specific allegations concerning what interest rates Defendants paid to Plaintiff. In fact, Plaintiff offers only one specific interest rate number (0.06% in 2022). *Id*. at ¶ 50. This disjointed, non-specific allegation falls woefully short of an alleged breach. *See Paek v. Plaza Home Mortg., Inc.*, No. CV 09–1729, 2009 WL 1668576, at *2 (C.D. Cal. June 15, 2009).

Second, in the October 2023 CIS Disclosure, CIS also discloses that the paid interest rates are "based on a number of factors including the rates paid by Program Banks, interest rates paid by our competitors who offer similar insured deposit programs, any expected changes in rates, and FlexInsured Account program

expenses." Ex. A at 5. This example language shows that the full document must be considered; it is misleading to read the "market, economic, and other business conditions" language in isolation. Thus, this clause cannot support a purported breach.

Third, mere references to the market as a factor on which CIS relies in the October 2023 CIS Disclosure are insufficient to create a binding obligation that could be breached. *Futo*, 826 F. Supp. 3d at 1035. In *Futo*, the Court noted that nearly identical language did not constitute a contractual obligation. *Id.* ("Saying that interest rates 'can vary and are impacted by several factors, including . . . market environment,' is a truism, not a commitment to paying 'market,' 'reasonable,' or 'minimum' interest rates.") (internal citation omitted). This is especially true when, as here, "expected change in rates" is but one factor. Ex. A at 5.

**iii. Using Other Cash Sweep Programs as a Purported Benchmark Does Not Provide an Alleged Basis for a Breach.**

Apart from the October 2023 CIS Disclosure, Plaintiff appears to use Vanguard, Fidelity, and R.W. Baird's cash sweep programs to support her breach of contract claim. Compl. ¶¶ 49–51. But Plaintiff does not allege why Vanguard and Fidelity, two direct-to-consumer brokerages offering proprietary non-FDIC Insured money market funds, are relevant to CIS, an independent broker-dealer that does not manage assets. Furthermore, she alleges "Vanguard offered interest payments of 4.5% in its Cash Sweep Program and Fidelity offered 5%," *id.* at ¶ 49, but she does not allege when those rates were offered or the deposit tiers for which those rates were offered (at one point comparing R.W. Baird's interest rates for $1 million+ deposit tier with the *lowest* Cetera deposit tier. *Id.* at ¶ 50.). Nor does she allege what interest rates Defendants paid at the same time for those same deposit tiers. Comparisons that ignore deposit tiers are meaningless and cannot support a breach of contract claim. *Cf. Welch v. TD Ameritrade Holding Corp.*, No. 07 Civ. 6904, 2009 WL 2356131, at *9 (S.D.N.Y. July 27, 2009) (holding that allegations concerning only the lowest deposit tier are insufficient when the interest rate for different deposit tiers is disclosed

for a cash sweep program.) These are meaningless apples-to-oranges comparisons. *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 484 (8th Cir. 2020) ("[A] complaint cannot simply make a bare allegation that costs are too high, or returns are too low . . . Rather, it 'must provide a sound basis for comparison . . . .'").

**iv. The Form CRS Also Does Not Support a Breach of Contract Claim.**

Plaintiff also references CIS's October 2025 Form CRS: Customer Relationship Summary ("Form CRS") and seems to imply that it is part of the parties' contract.[5] Compl. ¶ 55; Ex. B. More specifically, Plaintiff cites the following "best interest" excerpt from the Form CRS as a potential foundation for a breach: "When [CIS] provide[s] you with a recommendation as your broker-dealer or act[s] as your investment adviser, [CIS has] to act in your best interest and not place our interest ahead of yours." *Id*. at ¶¶ 55, 76; Ex. B at 3. Yet Plaintiff deliberately omits the rest, which discloses conflicts of interest between CIS and its brokerage account customers and specifically notes that these conflicts arise in the cash sweep program. Ex. B at 3 ("We are compensated by the banks that participate in the Cash Sweep program. This creates an incentive for us to recommend that you utilize the Cash Sweep program instead of leaving uninvested cash balances in your brokerage account or investing in other securities."). With the potential conflict clearly disclosed, Plaintiff cannot plausibly plead that the "best interest" provision supports a breach of contract claim.

In fact, this Court has already held near-identical language in the same circumstances does not constitute a breach. In a cash sweep case against LPL Financial LLC ("LPL"), plaintiffs alleged that LPL breached the terms of its agreements with plaintiffs when it failed to pay a "fair and reasonable interest rate" on their cash sweep account balances. *In re LPL Fin. Cash Sweep Litig.*, 789 F. Supp. 3d at 989. In dismissing that claim, Judge Robinson held that the plain language of

---

[5] https://cdn.adviceworks.net/content/images/2025-10/PV-697_10_25_secured.pdf (last accessed August 21, 2026) (attached hereto as Ex. B).

the contract states that only when the Defendant provides a "recommendation" does the "best interest" provision apply and they must put the client's interest first. *Id.* The default cash sweep program did not fall into the "recommendation" bucket because, *inter alia*, the cash sweep program was deliberately listed as an example of a conflict and could not be interpreted as a recommendation. *Id.* This Court also noted that the plaintiff could turn off the cash sweep at any time, as this program operates at the customer's will. *Id.* Just like LPL's disclosure, CIS's Form CRS specifically discloses the conflict inherent in the default cash sweep program to its customers, Ex. B at 3, and those customers could have opted out of the program at any time. Ex. A at 2, 3, 5. Thus, Plaintiff's breach of contract claim cannot be based on the Form CRS "best interest" provision, and it should be dismissed.

## IV. **<u>The Breach of Implied Covenant of Good Faith and Fair Dealing Claim Should Be Dismissed (Count III).</u>**

The Court should dismiss Plaintiff's breach of the implied covenant of good faith and fair dealing claim, as it is nothing more than a recycled breach of contract claim that omits critical elements. To start, since Plaintiff's breach of contract claim fails (Part III *supra*), her breach of the implied covenant claim fails as well. *Klosek v. Am. Express Co.*, No. 08–426, 2008 WL 4057534, at *16 (D. Minn. Aug. 26, 2008) (dismissing implied covenant claim where breach of contract claim failed).

Count III also fails for two other independently dispositive reasons: (1) Plaintiff has not alleged bad faith or (2) an impediment to her own performance. Overall, "Minnesota law does not favor claims based on the breach of an implied covenant of good faith and fair dealing . . . and does not recognize an independent cause of action for such a breach if it arises from the same conduct underlying a breach of contract claim." *Sports & Travel Mktg., Inc. v. Chicago Cutlery Co.*, 811 F. Supp. 1372, 1383 (D. Minn. 1993) (internal citation omitted).

**A. <u>Plaintiff Has Not Plausibly Alleged Bad Faith.</u>**

First, Plaintiff has not alleged bad faith, which is a requirement to state a breach of implied covenant. *U.S. Bank Nat'l Ass'n v. San Antonio Cash Network*, 252 F. Supp. 3d 714, 721 (D. Minn. 2017). Conduct potentially amounting to bad faith includes "wrongfully repudiating a contract, avoiding performance by affirmatively blocking the happening of a condition precedent, refusing to allow a party to perform unless the performing party waived other contractual rights, and using a party's rejection of an offer as a defense to contract liability when the defendant persuaded the party to reject the offer in the first place." *Futo*, 826 F. Supp. 3d at 1034.

No such actions are alleged here. Plaintiff is simply regurgitating her challenge to the amount of interest paid to her by Defendants. *See, e.g.*, Compl. ¶ 83. There is express authority dismissing a breach of implied covenant of good faith and fair dealing claim in the cash sweep context on this exact basis. In *Futo*, plaintiff made the same conclusory allegations that defendant acted dishonestly or maliciously, and the Court correctly held that "there are no allegations showing or permitting the plausible inference that [defendant] acted dishonestly or maliciously." *Futo*, 826 F. Supp. 3d at 1034 (dismissing breach of the implied covenant of good faith and fair dealing claim with prejudice). Accordingly, Count III should be dismissed.

**B. <u>Plaintiff Has Not Alleged that Her Performance Was Impeded.</u>**

Second, Plaintiff fails to allege an impediment to her own performance: "where a party's actions do not prevent another party from performing the contract, there is no breach of the implied covenant of good faith and fair dealing." *Sports & Travel Mktg.*, 811 F. Supp. at 1383. Count III therefore fails. *Futo*, 826 F. Supp. 3d at 1034.

**V. <u>Plaintiff Has Not Alleged—and Cannot Allege—a Breach of Fiduciary Duty (Count I).</u>**

Plaintiff's breach of fiduciary duty claim fails because CIS, as a non-discretionary broker-dealer, did not owe any such duty to her. The Complaint attempts to bootstrap a fiduciary duty from buzz words and references to industry standards,

but Plaintiff cannot invent a fiduciary duty from thin air. CIS's primary relationship with Plaintiff was one of bank-depositor, which does not create a fiduciary duty.

To allege a breach of fiduciary duty, Plaintiff must allege (1) the existence of a fiduciary duty; (2) the breach of said duty; (3) causation; and (4) resulting damages. *Fairview Health Servs. v. Armed Forces Off. Royal Embassy of Saudi Arabia*, 705 F. Supp. 3d 898, 916 (D. Minn. 2023). Plaintiff failed to adequately plead any of these four required elements.

### A. <u>Plaintiff Has Not Alleged the Existence of a Fiduciary Duty.</u>

A handful of relationships are *per se* fiduciary in nature, but all others are *de facto* and require plaintiffs to plead "special circumstances." *Ciofoletti v. Securian Fin. Grp., Inc.*, No. 18-cv-3025, 2020 WL 12863773, at *4 (D. Minn. Sept. 21, 2020) (*citing Swenson v. Bender*, 764 N.W.2d 596, 601 (Minn. Ct. App. 2009)). Plaintiff has not established a fiduciary relationship under either theory.

As an initial matter, simply providing a brokerage account does not create a *per se* fiduciary duty. Though poorly articulated, Plaintiff attempts to allege that her relationship with Defendants is contractual and *per se* in nature (Count II). Fiduciary duty claims fail in these circumstances. *Carlson v. SALA Architects, Inc.*, 732 N.W.2d 324, 331 (Minn. Ct. App. 2007) (reversing the district court's holding that a *per se* fiduciary duty existed because "[a]ll of the duties imposed on [the defendant] were contractual. If [the defendant] intentionally or negligently failed to perform those duties, it will have [only] breached the contract."). Indeed, "a claim for breach of fiduciary duty requires a showing of more than a simple broker-customer contract." *Corbey v. Grace*, 605 F. Supp. 247, 253 (D. Minn. 1985) (citing *Rude v. Larson*, 207 N.W.2d 709 (Minn. 1973)).

The mere fact that a financial institution offers a cash sweep program does not support a fiduciary duty. Fiduciary relationships require allegations of fact that amount to a "special relationship." *Id.* at 253 (Plaintiff's failure to "specify the content

of any special agreement or relationship" defeated his claim.). In fact, in cash sweep litigation, the District of Minnesota has twice rejected fiduciary duty claims by plaintiffs with brokerage accounts. *Futo*, 826 F. Supp. 3d at 1031 ("ordinary broker-customer relationships lack the 'special circumstances' that characterize a de facto fiduciary relationship under Minnesota law"); *Mehlman v. Ameriprise Fin. Inc.*, No. 24-3018, 2025 WL 2403252, at *10–11 (D. Minn. Aug. 19, 2025) (rejecting existence of fiduciary duties for brokerage accounts).

Notwithstanding a lack of foundation for any *per se* fiduciary relationship between the parties, Plaintiff attempts to allege three grounds for a purported *de facto* fiduciary duty here, none of which hold water: (i) an alleged agency relationship between Plaintiff and Defendants; (ii) Defendants' alleged hold and control over customer funds; and (iii) purported industry standards. Compl. ¶ 66. These theories fail on their own inadequacies and cannot convert an alleged contractual relationship to a fiduciary duty. Minnesota courts warn against entertaining a "cause[s] of action for breach of a *de facto* fiduciary duty when the cause of action merely disguises another, more apposite but unavailing legal theory" like a breach of contract claim. *See Swenson*, 764 N.W.2d at 603–04.

First, Plaintiff fails to allege an agency relationship between Plaintiff and Defendants. The Complaint claims Defendants acted as Plaintiff's agent "regarding all transactions" related to the cash sweep program. *See, e.g.*, Compl. ¶¶ 2, 31, 75, 81. But a bank-depositor agency relationship, i.e., "sweeping" funds into an interest-bearing deposit account with unaffiliated banks, and back when needed in the CIS account, does not create fiduciary duties. *Liberty Cap. Grp.*, 802 F. Supp. 3d at 716 ("opening . . . accounts at deposit banks, sweeping cash from brokerage accounts and depositing it with the deposit banks, and withdrawing cash from deposit bank accounts and returning it to brokerage accounts" are not "sufficient to create a fiduciary relationship."); *Hurley v. TCF Banking and Sav., F.A.*, 414 N.W.2d 584, 587 (Minn. Ct. App. 1987) ("Generally, a bank is not in a fiduciary relationship with

a customer, rather the relationship is one of debtor and creditor"); *see also Dey v. Robinhood Mkts., Inc.*, 780 F. Supp. 3d 882, 889 (N.D. Cal. 2025).

Second, Defendants' alleged "hold and control" over funds does not help Plaintiff state a fiduciary duty. Plaintiff has total control over her funds in the cash sweep program and her brokerage account. Ex. A at 1 ("You may discontinue your participation in the FlexInsured Account at any time); *id.* at 2 ("If you wish to opt out of the FlexInsured Account, you may do so at any time by contacting your financial professional."); *id.* at 3 (explaining alternatives to the Cash Sweep program); Ex. B at 2 ("In a brokerage account, [the client] purchase[s] and sell[s] investments"); *id.* ("You may select investments for your account, and we may recommend investments to you, but decisions about your investment strategy and the purchase or sale of investments will be yours."). Accordingly, Plaintiff maintains discretion to withdraw these funds, invest them, or exit the cash sweep programs at any time. Ex. A at 2, 5.

This is why courts across the country have unanimously held that brokerage accounts do *not* create a fiduciary duty when the customer retains discretion. *In re LPL Fin. Cash Sweep Litig.*, 789 F. Supp. 3d at 986 (dismissing fiduciary duty claims when defendant did not possess "the sine qua non of a fiduciary relationship in the financial advisor context—discretion"—with respect to the Cash Sweep Programs"); *In re Wells Fargo Cash Sweep Litig.*, 2025 WL 1785315, at *3; *Dey*, 780 F. Supp. 3d at 889–90; *In re JPMorgan Chase Cash Sweep Prgm.*, 2026 WL 396055, at *10–11. Plaintiff's "hold and control" theory, Compl. ¶ 66, implies that the cash sweep program functions as hedge funds—restricting withdrawals and eliminating discretion. Yet, the October 2023 CIS Disclosure and the nature of cash sweep programs belie that claim.

Third, the Complaint's hodgepodge citation to industry standards does not create a fiduciary duty. Without any specificity, Plaintiff alleges that Defendants purportedly violated Regulation Best-Interest ("Reg BI") under the Securities Exchange Act of 1934, Financial Industry Regulatory Authority ("FINRA"), and

Defendants' Code of Ethics. Compl. ¶¶ 21, 53, 66. Rule 8 requires plaintiff to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Here, Defendants cannot reasonably deduce what code or which FINRA standard is at issue.

With regards to Reg BI, any reference to this SEC rule is a red herring. Reg BI imposes a standard of conduct when broker-dealers "mak[e] a recommendation of any securities transaction or investment strategy involving securities." 17 CFR § 240.15l-1(a)(1). The rule is inapplicable to administration of cash sweep programs, which are voluntary account services offered to customers, not a recommendation for the purchase or sale of securities nor investment strategy involving securities. *See Dey,* 780 F. Supp. 3d at 890 (holding that Robinhood's cash sweep program was not a recommendation "regarding securities transactions or investment strategies relating to the program"). In fact, the Complaint does not allege any facts suggesting that Defendants recommended the cash sweep program to Plaintiff. Plaintiff simply cannot concoct a fiduciary relationship through Reg BI.

Reg BI does not, in any event, create a cause of action that could possibly sustain Plaintiff's fiduciary duty claims. *See* Regulation Best Interest: The Broker-Dealer Standard of Conduct, 84 Fed. Reg. 33318, 33462 (July 12, 2019) ("Regulation Best Interest [does not] create[] any new private right of action or right of rescission, nor do we intend such a result."); *Allen v. Fid. Brokerage Servs. LLC*, 711 F. Supp. 3d 219, 225 n.5 (S.D.N.Y. 2024) (Reg BI "specifically disclaimed . . . any new private right of action.") (internal citations omitted). Indeed, the U.S. Securities and Exchange Commission made clear that it was not imposing a fiduciary duty on broker-dealers when it issued Reg BI. *See* 84 Fed. Reg. at 33462 ("[I]nstead of adopting our approach in Regulation Best Interest, the Commission could have alternatively imposed a form of fiduciary standard on broker-dealers."). Accordingly, courts have unanimously held that Reg BI does not create a ground for a breach of fiduciary duty claim against cash sweep programs. *In re LPL*, 789 F. Supp. 3d at 988 ("The Court concludes that neither the [Investment Advisers Act] nor Reg BI apply

here because neither provides Plaintiffs with a private right of action."); *Schmidlin v. Raymond James Fin., Inc.*, No. 8:24-cv-2041-KKM-CPT, 2026 WL 847197, at *11 (M.D. Fla. Mar. 27, 2026) ("If the IAA and Reg BI do not provide a private right of action, they cannot be construed to give rise to a fiduciary duty flowing to the plaintiffs.").

The Complaint fails to establish the existence of any fiduciary relationship between the parties. Accordingly, Count I should be dismissed.

### B. Plaintiff Has Not Adequately Alleged Breach, Causation, or Damages.

Even if Plaintiff adequately alleged a fiduciary relationship (which she has not), she must still plead breach, causation, and damages. *Fairview Health Servs*, 705 F. Supp. 3d at 917. The Complaint contains more than one hundred paragraphs, yet only two present even conclusory and boilerplate allegations regarding purported damages. Compl. ¶¶ 71–72. These are not well-pled facts, and the Court should not consider them. *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d 1025, 1033 (C.D. Cal. 2017). Accordingly, Plaintiff's breach of fiduciary duty claim should be dismissed.

## VI. Plaintiff's Negligent Misrepresentation and Omissions Claim Should Be Dismissed (Count IV).

Plaintiff fails to state a negligent misrepresentation claim, which requires: "(1) a duty of reasonable care in conveying information; (2) breach of that duty by negligently giving false information; (3) reasonable reliance on the misrepresentations, which reliance is the proximate cause of physical injury; and (4) damages." *Flynn v. Am. Home. Prods. Corp.*, 627 N.W.2d 342, 350–51 (Minn. Ct. App. 2001). Moreover, negligent misrepresentation claims are a species of fraud and must be pled with particularity under Rule 9(b). *Edney Distr. Co. v. Buhler Tr. Inc.*, No. 10–CV–04929, 2011 WL 13136004, at *3 (D. Minn. Sept. 27, 2011). This requires pleading "the who, what, when, where, and how of the alleged false

representations." *Id.* (citation omitted); *Michael v. Vogelpohl*, No. A05–1263, 2006 WL 1073191, at *6 (Minn. Ct. App. Apr. 15, 2006); *DeBlasio v. Merrill Lynch & Co., Inc.*, No. 07CIV318RJS, 2009 WL 2242605, at *11 (S.D.N.Y. July 27, 2009). Plaintiff has neither met the four elements of this claim nor alleged them with Rule 9(b)'s required particularity, and Minnesota's independent duty doctrine bars the claim in any event.

### A. <u>The Independent Duty Doctrine Bars Plaintiff's Negligent Misrepresentation and Omissions Claim</u>

As a preliminary matter, this Court should dismiss the negligent misrepresentation claim because this dispute is controlled by a contract. Tort claims that rely on an underlying contract require an independent source for that duty of care. *Berger v. Nationstar Mortg.*, 118 F. Supp. 3d 1121, 1125 (D. Minn. 2015). Minnesota broadly respects the right of contractual parties to set the terms and conditions of their relationships and does not allow a contractual party to recover tort damages absent an "exceptional case" where the alleged misconduct is accompanied by a tort that is independent of the contract. *Id.* If a tort claim is based on the same conduct underlying the parties' contract, the tort claim is duplicative and cannot stand. *See, e.g.*, *First Integrity Bank, N.A. v. Ohio Cas. Ins. Co.*, No. 05–2761, 2006 WL 1371674 (May 15, 2006). In other words, "[a] fraud claim . . . must be based upon a misrepresentation that was outside of or collateral to the contract." *First Nat'l Bank Texas v. Wells Fargo Bank, N.A.*, No. 26-cv-2243, 2026 WL 2211171, at *7 (D. Minn. July 31, 2026) (citation omitted).

Here, Plaintiff pled no independent duty or allege any misrepresentations or omissions outside of the contract terms. She does not, for example, allege that Defendants omitted or misrepresented the historical interest rates, or otherwise allege that she was misled by Defendants' representatives when discussing the cash sweep program. As a result, courts regularly dismiss tort claims in cash sweep litigation. *See Futo*, 826 F. Supp. 3d at 1029 ("The bottom line, then, is that the sources of a duty

supporting Plaintiffs' negligence claim are just the contracts between Plaintiffs and [Defendant], and that means the independent-duty rule bars the claim."); *Liberty Cap. Grp.*, 802 F. Supp. 3d at 717 (dismissing negligence claim because it "impermissibly duplicates Liberty's contract and quasi-contract claims.").

### B. Plaintiff Has Not Alleged a Duty of Reasonable Care.

Even if the claim is not barred, Plaintiff's negligent misrepresentation and omission arguments falter out of the gate because she does not plead a duty of reasonable care with respect to disclosures to her. *Flynn*, 627 N.W.2d at 350–51. She claims that, while purportedly paying "below-market, unreasonably low interest rates to customers," Defendants should have disclosed "the magnitude of the [interest rate] differential or the specific compensation retained by Defendants" when Defendants stated that the "interest rate earned by clients 'will generally be lower than interest rates available to depositors in interest-bearing accounts held directly at a Program Bank or other FDIC-insured depository institutions.'" Compl. ¶¶ 89–90. But Plaintiff has not articulated an applicable duty for Defendants to disclose such specific quantitative details. "For an omission of a fact to constitute a negligent misrepresentation, 'there must first be a duty, either legal or equitable, to disclose that fact.' . . . The duty to disclose arises only if 1) there existed a fiduciary or confidential relationship between the parties; 2) one party was in possession of special facts that could not have been discovered by the other; or 3) one party who chooses to speak omits information so as to make the information actually disclosed misleading." *Futo*, 826 F. Supp. 3d at 1036 (internal citations omitted).

As to these factors, as noted above, there is no fiduciary relationship (Part V *supra*), and there is no alleged contractual relationship (Part III *supra*). Moreover, Defendants were not alleged to be in possession of "special facts that could not have been discovered by" Plaintiff—Defendants would have no way of knowing in advance what interest rates other third-party institutions would pay their customers

over the course of time such that Defendants could convey that information to Plaintiff. And, if Plaintiff wanted to know what other institutions were paying customers at any one particular point in time, she could have looked up that publicly available information; it was not uniquely in Defendants' possession. Finally, there is no allegation that Defendants omitted the information and that their omission caused the disclosed information to be misleading. Indeed, Plaintiff alleges that the October 2023 CIS Disclosure stated that the interest rates paid to clients by CIS would be lower than other available rates. Compl. ¶ 89. For these reasons, Plaintiff's claim fails.

### C. Plaintiff Fails to Plead Breach of Duty.

Even if Defendants had a duty of reasonable care (which they do not), Plaintiff fails to allege a breach of that duty. The Complaint argues that Defendants committed affirmative misrepresentations and omissions, but none of those listed are actionable. Plaintiff attacks Defendants' October 2023 CIS Disclosure stating that they will generally offer lower interest rates than others, including Program Banks directly. Compl. ¶¶ 6, 89. But this is a truthful disclosure, not a misrepresentation. In fact, Plaintiff's entire theory depends on it being true because otherwise she would have received higher interest rates from Defendants—hardly a set of facts that would give rise to a colorable theory of breach or damages. *Tharaldson v. Ocwen Loan Serv., LLC*, 840 F. Supp. 2d 1156, 1163 (D. Minn. 2011) (negligent misrepresentation requires a false statement of a past or existing material fact).

Regarding the omissions at issue, the Complaint claims that Defendants failed to "disclos[e] the magnitude of the differential" between its offered rates and its competitors'. Compl. ¶ 89. But that is neither feasible nor material to disclose to the customer. The fact that the Program Bank interest rates are higher than CIS's cash sweep interest rate is disclosed throughout the October 2023 CIS Disclosure, and customers are free to shop those rates as they wish. In any event, Plaintiff never pleads how omitting the details of Defendants' business arrangement with Program Banks

or specific rates paid by competitors "make the information actually disclosed misleading." *Futo*, 826 F. Supp. 3d at 1036 (dismissing negligent misrepresentation claims with prejudice). The Complaint further alleges that "Program Disclosures failed to disclose the specific rates the Program Banks were paying, the proportion of such payments that Defendants were retaining as fees, or the extent to which Defendants were profiting from the Programs." Compl. ¶¶ 89, 90. But that is simply untrue, as shown by the very document that Plaintiff cites elsewhere in the Complaint: the October 2023 CIS Disclosure explicitly states that both Defendants' interest rates and account management fees are always publicly available and easily accessible. Ex. A at 5, 8. Accordingly, Count IV should be dismissed.

### D. There Are No Allegations of Reasonable Reliance.

Plaintiff makes a single conclusory, unsupported statement that "Plaintiff justifiably relied" on Defendants' statements; this is not sufficient to meet the reliance element of a negligent misrepresentation claim. Compl. ¶ 91. To start, this allegation is not just implausibly alleged but directly contradicted by the documents cited by Plaintiff. Defendants' interest rates are always publicly available on the October 2023 CIS Disclosure. Ex. A at 5, 8. All Plaintiff needed to do to understand the "magnitude of differential" was review the website links she was provided with in that disclosure and compare the current cash sweep rates to any other deposit account rate at any other entity. Likewise, the percentage of fees CIS receives on the interest is also disclosed as links in the October 2023 CIS Disclosure. *Id.* at 8. As the *Futo* Court notes, "[t]here is nothing inherently false or misleading about directing a customer to a website for specific information. And there is nothing misleading about the language [defendant] used to refer its customers to this resource." 826 F. Supp. 3d at 1037. Furthermore, Defendants did not need to disclose the rates that Program Banks are paying since any customer may check those banks' direct rates, and cash sweep

customers receive the same rate no matter which Program Bank is involved. Ex. A at 5. Accordingly, Count IV fails.

**E. <u>Plaintiff Fails to Plead Damages Caused by the Alleged Negligent Misrepresentation.</u>**

Plaintiff claims that Defendants "directly and proximately caused harm" to her but fails to plead anything specific about such harm. Compl. ¶ 92. Defendants again are left guessing, e.g., what interest rate is she contending she should have received? Without more, Plaintiff's negligent misrepresentation claim fails.

**F. <u>Plaintiff Has Not Pled Negligent Misrepresentation with Particularity.</u>**

As noted above, negligent misrepresentation must be pled with particularity under Rule 9(b). *Edney Distrib. Co.*, 2011 WL 13136004, at *3. Yet Plaintiff does not allege *any* external communication or misrepresentation beyond the contract. She has alleged nothing about "who" made misrepresentations or "when" they were made, or "what" was represented that made it misleading. *Id*. The only thing that Plaintiff has alleged on this point is that Defendants' October 2023 CIS Disclosure tells consumers to expect lower interest rates than other markets. *See, e.g.*, Ex. A. at 2 ("The income we earn from Program Banks . . . will in *almost all circumstances* be substantially greater than the amount of interest [Plaintiff] earned from those same balances.") (emphasis added). Accordingly, Plaintiff has not met her Rule 9(b) pleading standard, and her claim for negligent misrepresentation must be dismissed.

**VII. <u>Plaintiff's Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") Claim Should Be Dismissed (Count V)</u>**

Under ICFA, a plaintiff can allege either deceptive practices, unfair practices, or both. Here, the Complaint does not plausibly allege either and instead relies on vague and conclusory allegations that are self-contradictory and inadequate.

### A. <u>Plaintiff Fails to Allege a Deceptive Practices Claim Under ICFA.</u>

To plausibly allege an ICFA claim for deceptive practices, plaintiff must show "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, (4) actual damage to the plaintiff; and (5) proximately caused by the deception." *Flores v. Aon Corp.*, 242 N.E.3d 340, 357–58 (Ill. App. Ct. 2023) (citation modified). In addition, deceptive claims sound in fraud and are subject to Fed. R. Civ. P. 9(b) heightened pleading standards, requiring particularity. *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018); *see also Fleury v. Gen. Motors LLC*, 654 F. Supp. 3d 724, 733 (N.D. Ill. 2023). This requires pleadings sufficient to allege the "who," "what," "where," "when," and "how." *In re Lurie Children's Hosp.*, No. 24-cv-05503, 2025 WL 2754760, at *14 (N.D. Ill. Sept. 27, 2025). In this case, Plaintiff cannot allege, and has not alleged, that: (i) the statements themselves are deceptive or (ii) that any statements proximately caused (iii) her damages.

#### i. Plaintiff Fails to Allege a Materially Deceptive Act.

Plaintiff has not pled any materially deceptive act. First, Plaintiff largely relies on Defendants' own disclosures, which are clear about the program and the related conflicts. Second, Plaintiff tries to impermissibly repackage her contract claim into an ICFA claim, which is improper. Accordingly, this Court should dismiss Count V.

First, under ICFA, "a statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). Here, Plaintiff does not allege that the rates, fees, and other disclosed data is *wrong*, or that she was told any incorrect information about how the program works. On the contrary, Plaintiff freely admits that CIS disclosed: (1) its conflicts, (2) that its cash sweep rates were lower than those offered by the Program Banks, and (3) its fees from the Program Banks. Compl. ¶¶ 4, 6, 28, 89. It strains credulity to claim that a customer could be deceived by the following statement:

> **Cetera earns substantial fees from Program Banks based on your participation, and the fee will be significantly higher to Cetera than if your funds were swept into a money market mutual fund** or deposited into another product or depository institution . . . **The compensation that Cetera receives presents a conflict of interest**, because Cetera receives a greater financial benefit when cash is swept into the FlexInsured Account than it otherwise would if your cash balance is held in a money market mutual fund or other products, and the **fees that Cetera receives reduces the amount of interest you receive** in the FlexInsured Account.

*Id*. at ¶ 4 (emphasis added). Accordingly, Plaintiff fails to plead a deceptive act.

Second, Plaintiff again attempts to recast her contract claim. Counts III and V rely on precisely the same facts. The Complaint does not allege any extra-contractual representation, or any particularity as to any deception. *Wooley v. Jackson Hewitt, Inc.*, 540 F. Supp. 2d 964, 973 (N.D. Ill. 2008) ("Because Plaintiff cannot transform what is in essence a breach of contract claim into a fraud claim under the ICFA, Plaintiff's ICFA claim is dismissed."); *DeLeon v. Beneficial Const. Co.*, 55 F. Supp. 2d 819, 826–27 (N.D. Ill. 1999); *Sklodowski v. Countrywide Home Loans, Inc.*, 832 N.E.2d 189, 197 (Ill. App. Ct. 2005). Thus, Plaintiff's ICFA claim fails.

**ii. Plaintiff Fails to Allege Damages Proximately Caused by Defendants.**

As she does elsewhere in her Complaint, Plaintiff claims that she has "suffer[ed] actual damages" without offering any specifics. Compl. ¶ 102. Though she offers that her damages include "the difference between the interest [Plaintiff] received under the Programs and the interest [she] would have received at reasonable market rates," this says nothing of substance. *Id.* Defendants again are left guessing—e.g., what interest rate is she contending she should have been paid? ICFA requires a plaintiff to plead damages, but the Complaint's unspecified damages claim does not come remotely close to the plausibility required under federal pleading requirements.

Moreover, Plaintiff has not pled that Defendant proximately caused her damages because she has not pled that she even read Defendants' disclosures, let

alone relied on them. *Tri-Plex Tech. Servs., Ltd. v. Jon-Don*, LLC, 241 N.E.3d 454, 462 (Ill. 2024) ("If the plaintiff has neither seen nor heard a deceptive statement, it cannot have relied on the statement and, consequently, cannot prove that the statement was the proximate cause of its injury."). While pleading actual and reasonable reliance is not necessary, Plaintiff does need to read the disclosures. *Id.*; *De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009) ("[T]o maintain an action under [ICFA], the plaintiff must actually be deceived by a statement or omission that is made by the defendant."). Therefore, the ICFA deception claim must be dismissed.

**iii. Plaintiff Fails to Plead ICFA with Particularity Under Rule 9(b).**

Plaintiff fails to allege any element of the ICFA deception claim with the particularity required by Rule 9(b). The rule is structured to give defendants fair notice of specific misconduct, protect businesses from baseless fraud charges, and prevent speculative and costly litigation. *See Kennedy v. Venrock Assocs.*, 348 F.3d 584, 594 (7th Cir.2003). "Accordingly, Rule 9(b) requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported." *Halperin v. Int'l Web Servs., LLC*, 123 F. Supp. 3d 999, 1007 (N.D. Ill. 2015). Plaintiff flouts Rule 9(b) by alleging fraud without any details concerning the allegedly deceptive act, Plaintiff's purported damages, or how Defendants purportedly caused them. Courts regularly dismiss such complaints. *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 718 (N.D. Ill. 2020) (dismissing ICFA claim because plaintiff "failed to identify 'a single actual misrepresentation that was communicated to [p]laintiff, much less which [d]efendant made it'").

Finally, Plaintiff has not adequately pled actual damages. The Complaint contains only conclusory allegations that lack factual support and "do not put [Defendants] on notice of the amount and exact nature of Plaintiff's injury." *Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809, 823 (N.D. Ill. 2016) (dismissing ICFA claim). Plaintiff thus fails to plead a deceptive practice under ICFA.

**B. Plaintiff Fails to Allege Unfair Practices Under ICFA.**

Plaintiff's unfair practices ICFA claim fares no better, as she cannot meet the following elements: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Fleury*, 654 F. Supp. 3d at 733.

First, a practice offends public policy if it is contrary to state or common laws of Illinois. *Browning v. AT&T Corp.*, 682 F. Supp. 2d 832, 844 (N.D. Ill. 2009). Plaintiff has not alleged that cash sweep programs, or Defendants' disclosed conflict of interest, are illegal or contrary to public policy (and they are not). INVESTOR.GOV, *Cash Sweep Programs for Uninvested Cash in Your Investment Accounts – Investor Bulletin*, SEC (May 14, 2025). As previously noted, the October 2023 CIS Disclosure is not deceptive. *Robinson v. Toyota Motor Credit Corp.*, 775 N.E. 2d 951, 962 (Ill. 2002) (dismissing ICFA claim). And although Plaintiff vaguely handwaves at a policy of "honest dealing in financial services and the protection of retail investors," Compl. ¶ 100, this is conclusory and insufficient to allege an ICFA claim.

Second, a practice is "immoral, unethical, oppressive, or unscrupulous" if consumers have no choice but to accept the deal. *Fleury*, 654 F. Supp. 3d at 734. Plaintiff's main allegation here is that Defendants purportedly exploited a fiduciary duty to extract unreasonable fees. Compl. ¶ 100. However, as discussed above, there was no fiduciary duty between the parties. On that ground alone, Plaintiff's ICFA claim fails. Moreover, it is neither alleged nor true that consumers must keep their money in the cash sweep program. The programs are voluntary. Not only is Plaintiff incorrect that she was not offered other options, Ex. A at 3, but the very disclosure she cites recommends that customers "compare the terms, interest rates," etc. to evaluate whether maintaining a cash sweep account makes sense. Ex. A at 5.

Finally, to show substantial injury, a plaintiff must allege that her injury is (1) substantial; (2) not outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) one that consumers themselves could

not reasonably have avoided. *Leszanczuk v. Carrington Mortg. Servs. LLC*, 21 F.4th 933, 943 (7th Cir. 2021). Plaintiff does not allege enough to meet any of these elements. She never alleges a "substantial" injury and leaves Defendants guessing as to her purported damages. Compl. ¶ 102. Furthermore, she does not allege why she could not have discontinued the cash sweep program and avoided any lower rates altogether. *See Leszanczuk*, 21 F. 4th at 943 (denying ICFA claim where plaintiff could have just switched his mortgage servicer). Accordingly, Plaintiff's ICFA claim fails.

### C. <u>Plaintiff's ICFA Putative Class Does Not Have a Sufficient Illinois Nexus and Should Be Stricken.</u>

Plaintiff fails to allege a sufficient nexus to Illinois, and her ICFA claim should be stricken on that basis alone. Moreover, it is unclear as to whether she is seeking to represent a putative nationwide class or an Illinois-specific subclass. The Complaint's class allegations list only one putative class, defined as "Class," which includes "[a]ll persons in the United States whose cash was subjected to Defendants' Sweep Programs during the applicable limitations period." Compl. ¶ 58. But Count V only discusses an undefined "Illinois Sub-Class." *Id.* at ¶¶ 96–97, 103. This lack of clarity compels striking any proposed Illinois subclass.

#### i. Plaintiff Has Not Sufficiently Alleged an Illinois Nexus.

It is black letter law that Illinois "did not intend [ICFA] to apply to fraudulent transactions which take place outside Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 853 (Ill. 2005). Rather, "the circumstances relating to plaintiffs' disputed transactions" must have "occurred primarily and substantially in Illinois." *Id.* at 854. The *Avery* Court considered a list of six relevant factors: (1) where the form document is drafted, (2) where the parties reside, (3) where the deception occurred or the deceptive contract executed, (4) defendant's principal place of business, (5) any choice of law provisions in the contract, (6) where complaints

regarding the defendant's performance were to be directed, and (7) where payments for the defendant's services were to be sent. *Id.* at 854–55.

Here, the *Avery* factors compel against an ICFA claim. CIS is a Delaware LLC headquartered in Minnesota, and CFG is a Delaware corporation headquartered in California. The contractual choice of law provision elects Minnesota, Ex. C at 3.

More importantly, though, Plaintiff does not allege that the purportedly deceptive scheme occurred in Illinois. For instance, Plaintiff does not allege that the decision to "unilaterally pay below-market, unreasonably low interest rates to customers," Compl. ¶ 99, were made in Illinois, a decision that is the essence of her deceptive practices claim. She does not allege that the rate negotiations with Program Banks occurred in Illinois, another key aspect of her claim. *Id*. at ¶¶ 30–32, 52. Finally, she does not allege that the contract was drafted in Illinois. These missing allegations are fatal to Plaintiff's ICFA claim. *See Our Pet Project, LLC v. Int'l Paper Co.*, No. 22-cv-1209, 2023 WL 143224, at *5 (N.D. Ill. Jan. 10, 2023) (dismissing ICFA claim for failure to specify location of alleged misrepresentations).

**ii. The Illinois Proposed Subclass Should Be Stricken.**

Even if Plaintiff herself maintains a sufficient nexus to Illinois for an ICFA claim, her proposed Illinois subclass is deficient. She offers no allegations regarding the scope or composition of the proposed Illinois subclass. Indeed, the Complaint fails to state whether these putative subclass members are merely Illinois residents or whether they must also have received and read the same October 2023 CIS Disclosure and Form CRS or some other disclosure. These are not trivial, but claim-determining distinctions. While Plaintiffs need not pinpoint the putative class at this stage, it must offer the Court something. Here, Plaintiff does not meet her burden under Rule 8, and to the extent she is trying to allege an Illinois subclass, the Court should strike it.

**VIII. <u>Plaintiff Fails to State a Claim for Unjust Enrichment (Count VI)</u>**

A contract controls the claims here (even if Plaintiff failed to attach it), which forecloses a claim for unjust enrichment. "As an equitable remedy, unjust enrichment does not apply when there is an enforceable contract governing the parties' relationship." *Futo*, 826 F. Supp. 3d at 1037 (internal quotation marks omitted); *Servicemaster of St. Cloud v. GAB Bus. Servs, Inc.*, 544 N.W. 2d 302, 305 (Minn. 1996) ("A party may not have equitable relief where there is an adequate remedy at law available."); *In re Wells Fargo Cash Sweep Litig.*, 2025 WL 1785315, at *4; *Goldsmith v. UBS Fin. Servs. Inc.*, No. 1:24-CV-6354-GHW, 2026 WL 819461, at *23 (S.D.N.Y. Mar. 25, 2026); *Schmidlin*, 2026 WL 847197, at *11; *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634, 639 (S.D.N.Y. 2020).

Plaintiff herself states that "Defendants' relationship with their customers are governed by written contracts." Compl. ¶ 74. As a result, she cannot allege an unjust enrichment claim. *Futo*, 826 F. Supp. 3d at 1037. Defendants do not dispute that a contract controls this case, but they contend that Plaintiff has failed to attach it or quote from it in a way that satisfies Rule 8. Unjust enrichment is an equitable remedy that is unavailable where a legal remedy exists. Count VI thus should be dismissed.

Count VI also fails because Plaintiff fails to allege the required elements. Compl. ¶¶ 106–10. Under Minnesota law, "a plaintiff must allege that the defendant knowingly received a benefit to which the defendant was not entitled, and that it would be unjust under the circumstances for the defendant to retain that benefit." *Graff v. Brighthouse Life Ins. Co.*, 698 F. Supp. 3d 1080, 1089 (D. Minn. 2023), *aff'd*, 109 F.4th 1118 (8th Cir. 2024) (citation omitted).

First, Defendants were entitled to receive the benefits they did under the cash sweep program. Defendants are entitled to be compensated for facilitating this service, and they disclosed all material aspects of cash sweep programs including the conflict of interest and generally lower interest rates. *See* Part III *supra*. There is nothing unjust or inequitable about Defendants retaining the fees they collected

throughout Plaintiff's voluntary participation in the program. For instance, in *Wright v. Capella Univ., Inc.*, the court dismissed former doctoral students' unjust enrichment claim where the students claimed, among other things, that the school intentionally prolonged the program to collect more tuition. 378 F. Supp. 3d 760 (D. Minn. 2019). Specifically, the students claimed that the school misrepresented the time it would take to complete the program and concealed the small percentage of students who completed the program on the advertised timeline. The court explained that it was not inequitable or unjust for the school to retain tuition for students who did not graduate within the advertised timelines because the party bargained for educational services in exchange for tuition, not a guaranteed degree. *Id.* at 774–75. As in *Wright*, Plaintiff's as-pled claims illustrate that she received what she bargained for, which is interest on uninvested funds that would otherwise remain static. Defendants never promised high interest rates; just as the school in *Wright* never promised a diploma. In fact, Defendants informed Plaintiff about interest rates that were "generally lower" than what she could receive elsewhere. *See* Ex. A.

Moreover, the Complaint fails to satisfy Rule 8 through its minimal allegations about Count VI. Compl. ¶¶ 109–10; *Gehring v. Osaic Inc.*, No. CV-25-00367-PHX-KML, 2026 WL 248379, at *10 (D. Ariz. Jan. 30, 2026). Because Defendants are not unjustly enriched and Plaintiff is barred from the claim regardless, it should be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that Plaintiff's Complaint be dismissed in its entirety.

Date: August 31, 2026

WILLKIE FARR & GALLAGHER LLP

By: /s/ Debra Bogo-Ernst
Debra Bogo-Ernst
Matthew M. Gurvitz

Attorneys for Defendants
Cetera Financial Group, Inc. and
Cetera Investment Services, LLC